MARVIN, Judge.
In this action by the City to increase its pro rata share of oil and gas production from a 40-acre unit within Shreveport, we exercise our supervisory jurisdiction and reverse the trial court’s ruling that the City did not have to join, as indispensable or necessary parties, the dozens of lot owners who had ratified the lease and shared in the production royalty from the unit, as well as several overriding royalty and working interest owners. We render judgment sustaining the exception and remand.
PROCEDURAL POSTURE
In late 1985, the City brought the action against the operator of the production unit, Petrol Industries, Inc., and its predecessor operator. In later supplements to the City's petition the purchaser of production from the well and the lessee of the City’s interest in the tract under a 1983 lease were joined and the initial allegations were more specifically detailed.
Petrol and another defendant filed exceptions, including those of non-joinder, which were heard in the trial court in 1987 and were ruled on in 1988. Writs were sought by Petrol after a new trial was denied. We ordered the record to be lodged here and the litigants to brief the issue. Only the issue of non-joinder is raised and discussed here.
FACTS
This plat depicts the 40-acre production unit:
*691 [[Image here]]
Leases of the lots around the drill site in the 40 acres were executed as early as 1957. Production occurred in 1958. The record shows that the City, and some owners of lots within the 40-acre tract, received no share of the production from the tract until demands were made in 1976 on Petrol, who became the operator of the well in 1969.
After these demands, Petrol hired attorneys and others to seek out owners of unleased lots to ratify the lease or leases under which it was operating. In the 1920’s the City had purchased some lots in the area to connect and extend existing streets. One of the attorneys for Petrol contacted the City in 1976.
*692 The City alleges that the true “facts” about its interest in the 40-acres were concealed by this attorney and that the attorney, since deceased, misrepresented that the City owned only a lV2-acre interest, the result of which concealment and misrepresentations was that the Commissioner of Finance of the City, in 1976,
—“hired” the attorney to “recover” from Petrol what the City was owed for past and future production, not knowing that the attorney had been hired by Petrol, and thereafter
—signed an agreement that purported to “ratify” the lease under which Petrol was operating,
—signed the Petrol division order reflecting the City’s lVa-acre interest in the ⅛ royalty,
—and “settled” its demands for the City’s share of past production for $858.32.
When the well was drilled in 1957 a 40-acre spacing order of the Commissioner of Conservation was in effect. By order of November 13, 1984, the Commissioner created a production unit of the 40 acres. This 1984 order apparently caused the City’s attorneys to investigate the basis of its “interest” in the 40-acre unit. The City now claims ownership of the minerals under 13 acres, most of which apparently underlies streets and alleys in the unit.
Alleging the above misrepresentations and asserting that the Commissioner of Finance acted in 1976 without authority and could not “bind” the City, the City asserted that it owned a 13-acre interest in the production from the 40 acres and that Petrol and its predecessor operator have been “unjustly enriched” by payments made to them for the production from the 40 acres.
The hearing on the exceptions revealed that no operator had examined the public records to determine the mineral and surface ownership of the individual lots in the 40 acres. After some lot owners made demands on Petrol in 1976, Petrol then did not obtain a title examination but used only the assessment roll to allocate mineral ownership of the many lots in the 40 acres and to prepare its division order.
The record also shows that the City leased its interest in the 40 acres with other acreage in Shreveport to another lessee on November 14, 1983, under which lease the City is entitled to a ½ royalty.
THE CITY’S CONTENTIONS
At the hearing on the exceptions, the City’s attorney admitted that the size of the interests of four overriding royalty owners will depend on the ownership of the streets and alleys and that “a couple of little working interest owners ... probably need to be in the suit.” Notwithstanding the City’s attempt to repudiate these admissions in its brief, we discern, as the City conceded in the trial court, that “the real argument here is [joinder of] these lot owners.”
The City, in effect, contends
—that its Commissioner of Finance was without authority to bind the City in 1976,
—and that the lot owners who leased or ratified the lease to the operator need not be joined in the City’s action because the City owns the streets and alleys as a matter of law.
The City’s contention that the lot owners cannot, under any circumstances, legally claim mineral ownership underlying any adjoining street or alley, is not a correct statement of the law. The City’s interest cannot be determined at this juncture, but only after a trial on the merits. Sée and compare Garrett v. Pioneer Production Corp., 390 So.2d 851 (La.1980), and statutory and case authorities discussed therein. As the petitioner, the City has the burden of proof.
Petrol, as the exceptor, had to establish, subject to careful analysis, that other parties will be affected by a judgment in the City’s action. State, Dept. of Hwys. v. Lamar Adv. Co. of La., Inc., 279 So.2d 671 (La.1973). See also Ruston State Bank & Trust v. Crystal Oil Co., 463 So.2d 860, 864 (La.App. 2d Cir.1985), and authorities cited and discussed therein.
*693 The trial court’s statement that Petrol “failed to produce any evidence that [the lot owners] have grounds to make an ownership claim regarding the streets and alleys” is clearly wrong in the light of uncon-tradicted testimony that the ownership of the minerals under the streets and alleys was credited by Petrol to the owners of the adjacent lots and not to the City. Whether or not Petrol mistakenly credited this interest to such lot owner is not now before us.
The uncontradicted testimony was given by Stroud, a geologist who had worked for Petrol for about three years, 1975-78, and who determined the pro rata share of each lot owner. He explained that in preparing the division order that was signed in 1976,
I had asked ... the attorneys involved [about] the method ... [and] what they ultimately decided was that these streets and alleys [in the 40 acres] should be credited to the adjoining lot owners ...
Q. Treating it as right-of-way to the City and you allocated it out to the center line to the adjacent lot owners?
That’s correct. * * *
Q. Was [the City’s] decimal interest arrived at by allocating to the City the streets and alleys within the .■.. unit? No, it wasn’t_the City was the owner ... of some lots within ... the unit and [we] credited the City’s interest with that land. * * *
No claim was ever asserted [by the City of ownership of the minerals under the streets and alleys] to my knowledge.
On the record before us, we must find that any increase in the City’s pro rata share of production, whether as an owner of unleased minerals or as a lessor-royalty owner, whether of ⅛ or lk royalty, mil affect, however slightly, the pro rata share of production of each lot owner within the 40 acres. The record will not support the conclusion that the lot owners may not be affected by the City’s action. Any implication by the trial court to the contrary is found to be clearly wrong.[1]
CONCLUSION
Having made the analysis suggested by Lamar Adv. Co. of La., Inc., supra, and finding that the interest of each lot owner sharing in the ⅝ royalty will be affected by a judgment on the merits of the City’s demands, we shall reverse the trial court and sustain the exception of non-joinder of indispensable parties.
We are not persuaded to the contrary by the equitable argument that a reversal of the judgment would impose a costly burden on the City to conduct the title work that Petrol or some operator should have done after the well proved productive. The City was alerted in 1976 that it owned minerals in the 40 acres and did not investigate either the basis or the extent of its interest for almost 10 years.
The record contains the names and addresses of the royalty, overriding royalty and working interest owners as of September 30, 1987, the date the exceptions were heard. Any change in those interests is subject to discovery by the City. Additionally, the City may seek to have some of its cost assessed as court cost. A trial court has discretion to determine and resolve what may be taxable as costs and to whom costs may be assessed. CCP Art. 1920; Sharbono v. H & S Const. Co., 478 So.2d 779, 789 (La.App. 3d Cir.1985).
DECREE
The writ is made peremptory, the judgment of the trial court is reversed, and judgment is hereby rendered sustaining Petrol’s exception of non-joinder. Within 120 days after this opinion becomes final the City shall join the overriding royalty, working interest and lot owners as defendants in the action or suffer dismissal of the action. The City is assessed with costs of *694 this review. Costs below shall be assessed in any final judgment.
REVERSED, RENDERED AND REMANDED.

. In its brief, the City "suspects” that the non-joinder exceptions are nothing more than Petrol's attempt to compel the City to conduct the costly title examination that Petrol should have conducted when it purchased the operating rights. The City suggests that Petrol, being without accurate title information, should have either converted the action into a concursus proceeding or otherwise joined the lot owners and others as third-party defendants and demanded reimbursement for any royalties that Petrol may have overpaid them.