_]¿KOSTELKA, J.
After the trial court partially denied its exception of nonjoinder, we granted defendant’s application for a supervisory writ. Inasmuch as plaintiffs suit necessarily seeks a determination of the continued validity of a mineral lease, we find that all those parties with an interest in the lease should be joined.

Facts and Procedural History

Alleging itself to be the owner of an unleased interest in an oil and gas well, plaintiff, Nab Natural Resources, L.L.C. (“Nab Nat.”), has filed the instant suit against the operator of a well, Caruthers Producing Co., Inc. (“Caruthers”), seeking an accounting, under La. R.S. 30:10(A)(3), for payments made on production from that well.[1] The land to which Nab Nat. claims an interest is located in Claiborne Parish, and was originally owned by F.B. King (“King”). In 1946, King executed a mineral lease in favor of the Texas Company. Sometime thereafter, another unit, designated as the Burgess-Simmo'ns Sand Unit 64 (“Sand Unit”), was created on land partially covered by the 1946 King lease. Since 1986, Caruthers has been operating a well in the Sand Unit which is designated as the F.B. King No. 1 Well. Nab Nat. posits that the 1946 King lease had lapsed by operation of law[2] prior to the beginning. of Caruthers’s operation in the Sand Unit. Thus, as an unleased owner, Nab Nat. claims entitlement to its pro rata share of the proceeds from the sale of production attributable to that tract.
In response to Nab Nat.’s suit, Caruth-ers filed a peremptory exception of non-joinder. Caruthers argues that, because Nab Nat.’s petition for an accounting will necessarily require a determination of the continued validity or prior lapse of |¡¡the 1946 King lease, it is necessary to join all those parties who would be affected by such a resolution. Thus, Caruthers de•manded joinder of:
*1243 (1) All persons and/or entities other than Nab Nat. who own the remaining interests in the minerals affected by the 1946 King lease;
(2) All persons and/or entities who own the leasehold interests in the 1946 King lease;
(3) All persons and/or entities who currently own minerals in the geographic boundary of the Sand Unit and/or have owned minerals in that area since the alleged lapse of the King lease; and
(4) All persons and/or entities who currently own interest in any oil, gas, and mineral lease affecting acreage included (partially or totally) within the geographic boundary of the Sand Unit and/or have owned such an interest since the alleged lapse date.
Caruthers suggests that, per La. C.C.P. art. 641(2)(a), these are persons whose ability to protect their interests would be impaired or impeded by the adjudication of this matter in their absence.
Inasmuch as the tract to which Nab Nat. claims an interest is only a portion of the Sand Unit, which in turn is only a part of the lands covered by the 1946 King lease, the trial court determined that only the lessees in the Sand Unit needed to be joined. On December 3, 1999, the trial court rendered judgment ordering Nab Nat. to join
those parties who have (i) claimed an interest in the Burgess-Simmons sand within the geographic boundary of [the Sand Unit] derived from that certain oil, gas and mineral lease dated April 9, 1946 from F.B. King, et al as Lessor to the Texas Company as Lessee ... during the period of production from the F.B. King No. 1 Well (the unit well for [the Sand Unit]), and (ii) shared in the proceeds of production from that well from date of first production to the present.
The court further ordered that Nab Nat. would not be required to join any other successor in interest to the interest of the lessee under the 1946 King lease. At Ca-ruthers’s request, we granted a supervisory writ to review the issue.
| aDiscussion
Germane to the resolution of the instant dispute is an examination of Nab Nat/s prior attempt to have the 1946 King lease (as well as a 1945 lease by King also to the Texas Company) declared to have lapsed by operation of law. In June 1996, Nab Nat. filed a petition in district court seeking damages from certain successors in title to part of the lessee’s interest in the King leases.[3] Similar to its current allegations in the instant matter, Nab Nat. contended that the 1945 and 1946 King leases, as well as the West Lisbon Pettit Lime Unit (see footnote 1), had lapsed, due to the cessation of production of minerals in paying ^-quantities, prior to the drilling of the F.B. King No. 1 Well.
As relief in that 1996 lawsuit, Nab Nat. sought a declaratory judgment stating that the above-mentioned leases and unit had lapsed. The defendants in that suit filed an exception of nonjoinder. The trial court sustained the exception, ordering the joinder as parties all persons, other than plaintiff, who own the remaining undivided interest in the minerals affected by the 1945-46 King leases, all persons other than defendants who own the remaining undivided leasehold interest, and all persons who currently own, or have owned, minerals in the geographic boundary of the West Lisbon Pettit Lime Unit.
Nab Nat. sought writs from this court and relief was denied on the grounds that the trial court’s decision was correct per La. C.C.P. art. 1880. Specifically, we ruled that:
If the plaintiffs assertions are true, then those who are not parties to the suit but who own or have owned interest in the minerals covered by the unit agreement will be affected by the declaration of lapse of the leases and/or unit agreement. These parties have an interest in the suit in that they have interest in *1244 whether or not the leases and/or unit agreement are still in effect. Although this suit may only seek a declaration of the lapse, this declaration will effect those parties who have an interest in the leases and/or unit agreement, which ae-cording |4to the defendants are still in effect, in that the declaration will effect their rights under the lease and/or unit agreement. Thus, these parties are required to be made a party to this suit.
Nab Nat. Resources v. Caruthers, 29,546 (La.App.2d Cir.01/23/97). In lieu of naming the additional parties, Nab Nat. subsequently attempted to have its suit certified as a class action. The trial court rejected this request and we affirmed. Nab Nat. Resources v. Caruthers, 30,649 (La.App.2d Cir.07/06/98), 714 So.2d 1288, writ denied, 98-2402 (La.01/08/99), 734 So.2d 1228. Thereafter, Nab Nat. took no action and seemingly abandoned its original suit in favor of the instant claim.
Opposing Caruthers’s exception of join-der, Nab Nat. argues that the instant suit merely seeks an accounting (and damages) under La. R.S. 30:10(A)(3)[4] — not a declaratory relief that the lease has terminated. Although Nab Nat. concedes that its current suit will require a determination of whether the King lease had lapsed and when, Nab Nat. reasons that such a determination will only require a “finding of fact” by the trial court, not a “declaration.” We find this to be an inconsequential distinction.
Mineral rights are real rights. La. R.S. 31:16. Owners thereof may assert, protect, and defend their rights in the same manner as the ownership or possession of other immovable property. La. C.C.P. art. 3664. Accordingly, Louisiana courts have recognized a rule that when the validity of a drilling unit is at stake in an action, the interest holders in the unit must be made parties to the suit. See Humble Oil v. Jones, 241 La. 661, 130 So.2d 408 (1961); City of Shreveport v. Petrol Industries, 550 So.2d 689 (La.App. 2d Cir.1989).
IsAnd, while not affected by the ultimate outcome of Nab Nat/s suit for an accounting, the owners of the mineral interests and leasehold interests in the King lease will definitely be impacted by a judicial finding as to the continued validity or prior lapse of a lease in which they have an interest. Although such a judgment would not, per se, have a res judicata effect against these nonjoined parties, it would seem improbable that the district court would later rule differently in a separate case should validity of the 1946 King lease once again come before it.
In that regard, La. C.C.P. art. 641 specifically provides that a person shall be joined as a party in the action when he claims an 'interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may, as a practical matter, impair or impede his ability to protect that interest. Whether in the format of a declaratory judgment or a suit for an accounting, a judgment finding that the 1946 King lease has lapsed or not will affect the interests of all those persons who own or have owned (after the date of the alleged lapse) an interest in the minerals affected by it.

Conclusion

Finding our prior decision in Nab Nat. Resources v. Caruthers, 29,546 (La.App.2d Cir.01/23/97) to be correct and applicable, even in the instant procedural posture, we amend the judgment of the district court to require Nab Nat. to join those persons who own/hold an interest in the minerals affected by the 1946 King lease and those persons who have owned such an interest at any time after the date of the alleged *1245 termination of the lease in addition to those parties already added relative to the Sand Unit. Costs are assessed to Nab Nat.
AMENDED AND AFFIRMED.

. This provision concerns units created by the commissioner of conservation. Accordingly, we note that the lands at issue are contained within the West Lisbon Pettit Lime Unit, the creation of which was approved in June 1959 by the Louisiana Department of Conservation for the drilling and production of oil and gas from the tracts leased from King. A drilling unit is the maximum area which may be efficiently and economically drained by one well. La. R.S. 30:9(B).

. The lease facially had a ten-year term and Nab Nat. contends it had ceased producing minerals in paying quantities. See La. R.S. 31:124.

. Caruthers, defendant in the instant matter, was not a party to the 1996 lawsuit.

. La. R.S. 30:10(A)(3) provides that "[i]f there is included in any unit created by the commissioner of conservation one or jn°re unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract’s pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.”