STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

13-736

JERRY J. SUIRE AND
ANTONIA G. SUIRE, ET AL.

VERSUS

OLEUM OPERATING COMPANY, L.C.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2007-697, Div. H
HONORABLE RONALD F. WARE,  DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

AFFIRMED IN PART;
AFFIRMED IN PART AS AMENDED;
AND REVERSED IN PART.

Joseph P. Hebert
Paul Matthew Jones
Brian W. Capell
Liskow & Lewis
822 Harding Street
Post Office Box 52008
Lafayette, Louisiana 70505
(337) 232-7424
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Oleum Operating Company, L.C. and
    AKSM, L.C.

**Michael G. Hodgkins**
**Jere Jay Bice**
**Veron, Bice, Palermo & Wilson, L.L.C.**
**721 Kirby Street**
**Post Office Box 2125**
**Lake Charles, Louisiana 70602-2125**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Jerry J. Suire and Antonia G. Suire**
**COUNSEL FOR PLAINTIFF IN RECONVENTION/APPELLEE:**
 **J & J Onshore Production, Inc.**

**Charles R. Minyard**
**600 Jefferson Street, Suite 501**
**Lafayette, Louisiana 70502**
**(337) 266-2300**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Jerry J. Suire and Antonia G. Suire**
**COUNSEL FOR PLAINTIFF IN RECONVENTION/APPELLEE:**
 **J & J Onshore Production, Inc.**

**J. Clayton Johnson**
**Brett P. Furr**
**Edward D. Hughes**
**Taylor, Porter, Brooks, & Phillips, LLP**
**451 Florida Street, 8th Floor**
**Post Office Box 2471**
**Baton Rouge, Louisiana 70821**
**(225) 387-3221**
**COUNSEL FOR INTERVENORS/APPELLEES:**
 **Preston Andrews Price and Susan R. Price and**
 **Steven Haller and Paula Haller**

**GENOVESE, Judge.**

In this suit for damages arising out of a mineral lease, the current operators/lessees, Oleum Operating Company, L.C. and AKSM, L.C., appeal the trial court judgment in favor of the overriding royalty interest owners, Jerry J. and Antonia G. Suire, Preston Andrews and Susan R. Price, and Steven and Paula Haller. The overriding royalty interest owners and J & J Onshore Production, Inc.,[1] a previous operator/lessee, have all answered the appeal. For the following reasons, we affirm in part, affirm in part as amended, and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation involves the alleged failure of Oleum Operating Company, L.C. and AKSM, L.C. (collectively referred to as Oleum)[2] to pay the overriding royalty interest (ORI) due Jerry J. and Antonia G. Suire, Preston Andrews and Susan R. Price, and Steven and Paula Haller (collectively referred to as ORI owners). The property subject to the mineral lease at issue is located in Calcasieu Parish, and the owner/lessor of the property is Sweet Lake Land & Oil Company (Sweet Lake). The current operator/lessee is Oleum. The present parties' interests stem from the execution of a mineral lease in 1947 by Sweet Lake and J. A. Bonham.[3]

Since 1947, there have been several different operators/lessees of the property owned by Sweet Lake. A portion of the ORI at issue in this litigation was created in 1989, when Flash Oil & Gas granted an ORI to its owners, Preston Price and Steven Haller (and their wives Susan R. Price and Paula Haller), collectively

---

[1] J & J Onshore Production, Inc. is owned by Jerry and Antonia Suire, and it is also a party to the lawsuit.

[2] These entities are owned and operated by Mike Snell and his family.

[3] We refer to the original lease herein as the Old Lease as it is referred to by the parties.

amounting to 2.0153%, and a 3% ORI to Jerry Suire.[4]  In later years, J & J Onshore

Production, Inc. (J & J) became the operator/lessee of the Old Lease, and it

continued to pay the ORI to the Flash Overrides.

Over time, the relationship between Sweet Lake and J & J, particularly

Mr. Suire, became strained, and, in 2000, Sweet Lake sued J & J, claiming that the

Old Lease was terminated.[5]  In that litigation, Sweet Lake also alleged that J & J

failed to pay royalties, failed to develop the property, and failed to produce oil and

gas in paying quantities.  During this contentious period, Oleum became involved

when it purchased J & J's operating interest and assigned an additional ORI to

Mr. Suire.[6]  Ultimately, in 2003, a settlement agreement was reached between

Sweet Lake, J & J, and Oleum wherein the terms, rights, and obligations of the

parties under the Old Lease were changed.[7] For five years thereafter, Oleum

continued as operator/lessee until further disputes arose between it and Sweet Lake

in 2008.

In 2008, Sweet Lake sent a letter to Oleum, claiming that it violated the

terms of the 1947 Amended Lease.  Sweet Lake demanded that Oleum vacate the

property and return all fruits derived from the 1947 Amended Lease, dating back to

2003.  At this juncture, negotiations ensued between Sweet Lake and Oleum.  As a

result of these negotiations, on July 2, 2008, Oleum unilaterally executed an Act of

Release of Oil, Gas and Mineral Lease thereby releasing the 1947 Amended

---

[4]We refer to these ORIs as the Flash Overrides, as they are referred to by the parties.

[5]Additionally, Sweet Lake sought damages for the restoration of the property, plugging and abandoning wells, and removal of equipment.

[6] This ORI, referred to as the Suire Override, amounted to 1.98%.

[7]We refer to this new agreement as the 1947 Amended Lease, as it is referred to by the parties.

Lease.[8]  The 2008 Release was executed without the knowledge of the ORI owners, who, as a result thereby, were divested of all of their ORI.  Also on July 2, 2008, another lease was entered into by Oleum, through Mike Snell, an owner and operator.[9]  Notably, Mr. Snell transferred the divested ORI owners' rights to himself, personally, in the New Lease.  The consequences of the 2008 Release and the New Lease are at the heart of the current litigation.

According to Oleum, "Mr. Snell was able to fashion a release of the Old Lease and the creation of a new one."  The New Lease was more onerous and less profitable to Oleum, but was necessary for it to avoid what it perceived to be a "disastrous potential liability[.]"  Oleum describes a "distinct break between the Old Lease and the New Lease . . . driven by an aggressive landowner with enormous leverage under the circumstances."  Crucial to the claims of "bad faith" raised by the ORI owners in this litigation, Oleum argues that "it was those circumstances, and those alone, that led to the New Lease."  This characterization is critical to the present claims in that Oleum concludes that "[w]hen the Old Lease ceased to exist[,] so did [the] overriding royalty interest[s].  Nevertheless, [the ORI owners] seek money damages equal to the value of the override as though it attached to the New Lease."

In contrast, the ORI owners describe the actions of Mr. Snell, culminating in the New Lease in 2008, quite differently.  Initially, they assert that production was continuing on a lease that had "never terminated" when Sweet Lake made a demand on Oleum in 2008, "making the same allegations they had in 2003."  The ORI owners posit that although "[i]n 2003 Oleum successfully refuted these

---

[8]We refer to this document as the 2008 Release, as it is referred to by the parties.  An Act of Correction was later filed on July 29, 2008, providing for the effective date of the release to be March 1, 2008.

[9]We refer to the 2008 lease as the New Lease, as it is referred to by the parties.

unfounded allegations[,]" in 2008, it "took positive action to terminate a valid lease." Specifically, they argue that Oleum, through Mr. Snell, saw Sweet Lake's demand "as an opportunity to release the existing lease and enter a new lease rather than amend the existing lease as had been done in 2003[,]" all to their detriment. Moreover, they argue that an agreement as to the terms of the 2008 Release was reached between Oleum and Sweet Lake, the result of which was an attempt "to eliminate the rights of the overriding royalty interests which attached to the 1947 Amended Lease." Notably, as a result of the New Lease, what was once their ORI was transferred to Mr. Snell personally and "resulted in significant personal financial gain at [their] expense[.]" Again, germane to the issue of "bad faith," the ORI owners conclude that Oleum, "acting through Mike Snell, released the 1947 Amended Lease motivated by anger, ill will, and hatred . . . and by a desire to take the revenues attributable to the [ORI owners] for themselves."

In the interim, following the 2003 settlement agreement, Oleum had continued to pay the ORI owners as had been done since it became an operator/lessee in 2000.[10] However, in June 2007, Oleum terminated all payments of the 1.98% ORI (the Suire Override) on the grounds that the 2003 settlement agreement triggered a proportionate reduction clause (PRC) contained in the conveyance documents of the assignment of the Old Lease from J & J to Oleum.[11] Then, in February 2008, Oleum terminated payment of Mr. Suire's 3.0% ORI without explanation. Finally, in March 2008, the ORI of the Prices and the Hallers were terminated by Oleum.

---

[10]In 2005, Oleum assigned a portion of the lease to AKSM.

[11] The PRC was the subject of cross motions for partial summary judgment. Following a hearing, the trial court denied Oleum's motion and granted Mr. Suire's motion, ruling that the PRC did not provide a legal basis for Oleum to terminate the payment of Mr. Suire's 1.98% royalty interest.

What follows is a chronology of events occurring from the institution of the Old Lease through the scenario existing as of 2008 that are relevant to this litigation:[12]

| DATE | DOCUMENT | PARTIES |
|---|---|---|
| 4/10/1947 | Original 1947 J. A. Bonham Mineral Lease (Old Lease) | Sweet Lake to J. A. Bonham |
| 9/1/1989 | Assignment & Bill of Sale | BP Exploration, Inc. to Jerry Suire |
| 9/1/1989 | Assignment & Bill of Sale & Conveyance | Jerry Suire to Flash Oil & Gas |
| 9/1/1989 | Assignment of ORI (Flash Override) | Flash Oil & Gas to Jerry Suire- ORI of 3% |
| 5/23/1991 | Assignment of ORI (Flash Override) | Flash Oil & Gas to Preston A. Price and Susan Price- ORI of 1.007650% Steven Haller and Paula Haller- ORI of 1.007650% |
| 5/15/2000 | Purchase and Sale Agreement | J & J to Oleum |
| 5/24/2000 | Assignment & Bill of Sale | J & J to Oleum |
| 6/14/2000 | Assignment of ORI (Suire Override) | Oleum to Jerry Suire - ORI of 1.98% |
| 5/28/2003 | Amendment to Lease (1947 Amended Lease) | Sweet Lake and Oleum |
| 5/28/2003 | Settlement Agreement and Release | Sweet Lake, Oleum, and J & J |
| 7/5/2005 | Assignment & Bill of Sale | Oleum to AKSM |
| 7/5/2005 | Assignment of ORI | Oleum to Mike Snell- ORI of 5% |
| 7/2/2008 | Conveyance of NRI[13] to the 1947 J. A. Bonham Lease | AKSM and Oleum to several persons including Mike Snell individually ORI of 10% |

---

[12]This listing is not comprehensive. For brevity, only those events pertinent to our consideration have been included.

[13]"NRI" is the acronym for "net revenue interest[.]"

| 7/2/2008 | Act of Release (2008 Release) | AKSM and Oleum |
| 7/2/2008 | New Oil and Gas Lease (New Lease) | Sweet Lake to AKSM |
| 7/29/2008 | Act of Correction to Release | AKSM and Oleum |

Purportedly, the foregoing culminated in the 2008 Release by Defendants, Oleum and AKSM, of what was originally the 1947 mineral lease in which Plaintiffs, Jerry and Antonia Suire, and Intervenors, Preston Andrews and Susan R. Price and Steven and Paula Haller, had an ORI. Once released, a New Lease was entered into by Sweet Lake and AKSM, which wholly eliminated these ORIs and gave Mr. Snell, personally, a 10% ORI in the mineral lease.

As a result of these events, suit was instituted by the Suires against Oleum and AKSM, initially seeking unpaid ORI, penalties, and attorney fees. After the initial petition was filed, a number of incidental demands were made by and against the various parties. Claims of intervention were asserted by the Prices and the Hallers for their unpaid ORI, penalties, and attorney fees. Oleum filed a reconventional demand against the Suires, asserting that it was entitled to an offset and/or recoupment of ORI payments made to Mr. Suire and, further, that their ORI was subject to a reduction based upon the PRC. Oleum later supplemented its reconventional demand against the Suires, seeking damages for a misrepresentation of the condition of the C-8 wellbore.

Oleum also filed a third party claim against J & J, claiming that it was entitled to a reimbursement of the ORI payments erroneously made to J & J. Alternatively, Oleum asserted that if it were determined that it had improperly taken certain offsets, that these amounts were still owed by J & J to Oleum. Claims were also made against J & J for damages relative to the C-8 wellbore.

J & J filed a reconventional demand against Oleum, alleging that Oleum breached the terms of their May 15, 2000 Purchase and Sale Agreement, whereby J & J sold its interest in the 1947 Amended Lease to Oleum by failing to pay Mr. Suire his 1.98% ORI and in failing to provide J & J notice of its attempt to release the lease. Further, J & J contended that Oleum's failure to obtain J & J's agreement was a breach of the 2003 settlement agreement.

**Action of the Trial Court**

After a trial on the merits, the trial court recited oral reasons for judgment in favor of the ORI owners and dismissed the other ancillary claims between the parties.[14] In accordance therewith, the trial court signed a judgment October 15, 2012, which provides, in pertinent part, as set forth below:

*Claims of Jerry and Antonia Suire against Oleum and AKSM*

(1) Judgment is rendered in favor of Jerry and Antonia Suire against Oleum and AKSM "jointly, severally[,] and in solido," for the sum of $283,282.79, "together with judicial interest accruing from the date each payment was due until paid on all past due royalty owed[,] which amount totals $66,918.96 through and including September 7, 2012."

(2) Judgment is rendered in favor of Jerry and Antonia Suire against Oleum and AKSM "jointly, severally, and in solido[,]" for the sum of $868,872.43, "together with judicial interest from [the] date of judicial demand of October 15, 2008, which amount totals $156,098.01 through and including September 21, 2012."

(3) Judgment is rendered denying the Suires' claim for penalties and attorney fees.

*Claims of Steven and Paula Haller against Oleum and AKSM*

(1) Judgment is rendered in favor of Steven Haller against Oleum and AKSM "jointly[,] severally[,] and in solido," for the sum of $101,378.00, "together with judicial interest accruing from the date each payment was due until paid on all past due royalty owed and judicial interest on all damages from the date of judicial

---

[14]As hereinafter discussed, the validity, vel non, of the 2008 Release and the New Lease are both critical to a legal disposition of the claims made herein; however, neither were specifically ruled on by the trial court or referenced in the judgment.

7

demand of July 16, 2010[,] which amount totals $10,578.61 through and including September 21, 2012."

(2) Judgment is rendered in favor of Paula Haller against Oleum and AKSM "jointly[,] severally[,] and in solido," for the sum of $101,378.00, "together with judicial interest accruing from the date each payment was due until paid on all past due royalty owed and judicial interest on all damages from the date of judicial demand of July 16, 2010[,] which amount totals $10,578.61 through and including September 21, 2012."

(3) Judgment is rendered denying the Hallers' claim for penalties and attorney fees.

### Claims of Preston Andrews and Susan R. Price against Oleum and AKSM

(1) Judgment is rendered in favor of Preston Andrews and Susan R. Price against Oleum and AKSM "jointly[,] severally[,] and in solido," for the sum of $202,857.00, "together with judicial interest accruing from the date each payment was due until paid on all past due royalty owed and judicial interest on all damages from the date of judicial demand of July 16, 2010[,] which amount totals $21,157.15 through September 21, 2012."

(2) Judgment is rendered denying the Prices' claim for penalties and attorney fees.

### Third Party Claim of Oleum against J & J

Judgment is rendered denying the third party claim.

### Reconventional Demand of Oleum against Jerry and Antonia Suire

Judgment is rendered denying the reconventional demand.

### Reconventional Demand of J & J against Oleum

Judgment is rendered denying the reconventional demand.

### Supplemental Reconventional Demand of Oleum against J & J

Judgment is rendered denying the supplemental reconventional demand.

Oleum filed a Motion for New Trial, which was denied by the trial court pursuant to judgment of February 20, 2013. Oleum has appealed the October 15, 2012 judgment from the trial on the merits as well as the February 20, 2013

judgment denying its Motion for New Trial.[15]  Additionally, the ORI owners and

J & J have all answered the appeal.

## ASSIGNMENTS OF ERROR

**OLEUM'S APPEAL**

On appeal, Oleum presents the following assignments of error for our

review:

1. The trial court erred in awarding damages to [the ORI owners] based on Oleum and AKSM's release of the Old Lease.  [The ORI owners] did not negotiate an anti-washout provision into their [ORI] and are not entitled to the protection an anti-washout provision provides no matter what theory of recovery they advance.

2. The trial court erred in allowing [the ORI owners] to introduce parol evidence to support their claim based on the [ORI], which are incorporeal immovables.  [The ORI owners] are not able to prove such a right based on the four corners of the relevant contracts and are not allowed to rely upon parol evidence to prove otherwise.

3. The trial court erred in finding that Oleum acted in bad faith toward [the Suires] by releasing the Old Lease when the evidence proves that Oleum released the Old Lease for self[-]preservation, not to relive [sic] itself of the burden of the [ORI].

4. The trial court erred in finding that Oleum and AKSM acted in bad faith toward [the Prices and the Hallers] when [they] did not even attempt to introduce evidence that the Old Lease was released with any ill-will towards them – rather, they see themselves as "collateral damage."

5. The trial court erred in determining that Oleum and AKSM are solidarily liable on [the Suires'] claim for damages due to the release of the Old Lease.

6. The trial court erred in determining that the proportionate reduction clause was not applicable to [the Suires' 1.98% ORI].

---

[15]Although Oleum's Motion for Suspensive Appeal includes language that it seeks an appeal from the February 20, 2013 judgment, Oleum does not identify or include any alleged error in the trial court's denial of its Motion for New Trial in its assignments of error nor does it include a discussion of same in its appellate brief.  Therefore, we do not address the trial court's judgment of February 20, 2013 denying Oleum's Motion for New Trial.  Uniform Rules—Courts of Appeal, Rules 1-3; 2-12.4.

**SUIRES' ANSWER TO APPEAL**

On appeal, the Suires present the following assignments of error for our review:

1. The [t]rial [c]ourt committed legal error when it failed to award penalties and attorney fees for [Oleum's] unreasonable failure to pay [ORIs] to Jerry and Antonia Suire, as mandated by the Louisiana Mineral Code, [La.R.S.] 31:212.21[,] et seq.

2. The [t]rial [c]ourt committed legal error when it failed to rule that the lease entered into by AKSM and [Sweet Lake] on July 2, 2008, with an effective date of March 1, 2008 [(the New Lease)], was a top-lease, and since there was production of oil and gas during the time of the top-lease, that all [ORIs] attached to the top-lease once the underlying lease was terminated in bad faith.

3. The [t]rial [c]ourt committed legal error when it failed to rule that the attempted release of the [1947 Amended Lease], was not valid and did not release that lease, thereby preserving the rights of all third persons, including the [ORI] owners.

**PRICES' AND HALLERS' ANSWER TO APPEAL**

On appeal, the Prices and Hallers present the following assignments of error for our review:

1. The [t]rial [c]ourt committed legal error when it failed to award penalties and attorney fees for [Oleum's] unreasonable failure to timely pay [ORIs] to the Prices and Hallers, as mandated by the Louisiana Mineral Code, [La.R.S.] 31:212.21[,] et seq.

2. The [t]rial [c]ourt committed legal error when it failed to rule that the lease entered into by AKSM and [Sweet Lake] on July 2, 2008, with an effective date of March 1, 2008 [(the New Lease)], was a top-lease, and since there was production of oil and gas during the time of the top-lease, that all [ORIs] attached to the top-lease once the underlying lease was terminated in bad faith.

3. The [t]rial [c]ourt committed legal error when it failed to rule that the attempted release of the [1947 Amended Lease] was not valid and did not release that lease, thereby preserving the rights of all third persons, including the [ORI] owners.

**J & J'S ANSWER TO APPEAL**

On appeal, J & J presents the following assignments of error for our review:

1.  The [t]rial [c]ourt erred by not ruling that Oleum and/or AKSM violated the 2003 Settlement Agreement by failing to obtain the consent and written agreement of [J & J] Onshore to any attempted release of the [1947 Amended Lease.]

2.  The [t]rial court erred by not ruling that the attempted release, by Oleum and/or AKSM, of the [1947 Amended Lease], violated the lease requirement of giving a forty-five (45) day notice to [J & J] Onshore.

3.  The [t]rial [c]ourt erred by not ruling that the [1947 Amended Lease] remained in full force and effect as it related to all then producing wells and twenty (20) acres surrounding each well.

4.  The [t]rial court erred by not ruling that [Oleum's] breach of the Purchase and Sale Agreement and Assignment and Bill of Sale whereby J & J . . . transferred all of its right, title[,] and interest in the [Old Lease] to Oleum . . ., resulted in voiding the sale, *ab initio*, and an award of the profits wrongfully realized by [Oleum and/or AKSM].

## LAW AND DISCUSSION

**JOINDER OF PARTIES NEEDED FOR JUST ADJUDICATION**

This complex litigation stems from a mineral lease encumbering certain immovable property in Calcasieu Parish. The parties before this court pray for relief that includes (but is not limited to) a judicial declaration of the validity of the 2008 Release and the consequences thereof insofar as its purpose was to terminate the 1947 Amended Lease, as well as a declaration of the validity of the New Lease and the consequences thereof.

At all times relevant to this appeal, Sweet Lake has been the owner of the subject property, the lessor under the Old Lease, the lessor under the 1947 Amended Lease, and the lessor under the New Lease, which are at the core of this litigation.[16] The terms of the 1947 Amended Lease and the New Lease are significantly different, and a determination by this court of which lease in fact burdens the property today necessarily requires an adjudication of the rights and

---

[16]It is noteworthy that Sweet Lake was not a party to the 2008 Release, which was executed only by Oleum.

obligations of the landowner, Sweet Lake. We, therefore, *sua sponte*, raise the issue of the failure of Sweet Lake to be made a party to these proceedings.[17]

With regard to the joinder of parties needed for just adjudication, La.Code Civ.P. art. 641 (emphasis added) provides:

> A person ***shall*** be joined as a party in the action when either:
>
> (1) In his absence complete relief cannot be accorded among those already parties.
>
> (2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
>
> (a) As a practical matter, impair or impede his ability to protect that interest.
>
> (b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

An adjudication of whether the 2008 Release was valid and, consequently, whether the 1947 Amended Lease or the New Lease governs today, directly affect the immovable property owned by Sweet Lake. To effectuate complete adjudication, it is necessary that Sweet Lake be joined as a party to this litigation due to the effect that a judgment will have on which lease presently encumbers its property and the present operations under that lease. Certainly, Sweet Lake will be impacted by a judicial finding as to the continued validity of a lease, an effective release thereof, and/or the entry into a new lease in which it has an interest in as lessor. *Cf. Nab Natural Res., L.L.C. v. Caruthers Producing Co., Inc.*, 33,726 (La.App. 2 Cir. 8/25/00), 765 So.2d 1241 (Owners of the mineral and leasehold interests in a lease, who would be impacted by an adjudication as to the validity of a lease, or a lapse thereof, were required to be joined in an action by an alleged owner of an unleased interest in an oil and gas well against the operator of the

---

[17]Nonjoinder of a party is a peremptory exception which "may be noticed by either the trial or appellate court on its own motion." La.Code Civ.P. art. 927(B).

12

well.); *City of Shreveport v. Petrol Indus., Inc.*, 550 So.2d 689 (La.App. 2 Cir. 1989) (Lot owners within a forty-acre tract were indispensible parties in an action brought by the city against a unit operator seeking an increase in its pro rata share of production royalty.).

Louisiana Code of Civil Procedure Article 641 specifically provides that "a person shall be joined as a party in the action" if "[h]e claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may . . . [a]s a practical matter, impair or impede his ability to protect that interest" or may "[l]eave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations." In the case at bar, given the issues raised by those already parties to these proceedings, we find that Sweet Lake is a party needed for just adjudication pursuant to La.Code Civ.P. art. 641.

We are cognizant of the fact that Oleum filed a motion in the trial court seeking permission to file a third party demand against Sweet Lake and that its motion was denied by the trial court. However, the claim Oleum sought to assert against Sweet Lake was only for indemnification against the claims of the ORI owners.[18] No question was raised in the trial court by any party, nor by Sweet Lake itself, of the necessity of Sweet Lake being made a party pursuant to La.Code Civ.P. art. 641, given the claims being asserted at the time. No party in this litigation asserted in the trial court that the 2008 Release was invalid such that it failed to terminate the 1947 Amended Lease, and no party asserted that the New Lease was invalid. To the contrary, the claims being asserted in the trial court only sought damages resulting from the *release* of the 1947 Amended Lease. This is

---

[18] Oleum's right to indemnification was contained in the 2003 settlement agreement reached between Sweet Lake, J & J, and Oleum.

abundantly clear from the arguments of all counsel, including Sweet Lake, present at the hearing on Oleum's motion to file its third party demand.[19] However, because Sweet Lake has potential exposure, vis-à-vis indemnity, *and also* general exposure as its rights are now sought to be adjudicated pursuant to the present issues surrounding the 2008 Release and the New Lease, Sweet Lake is a party needed for just adjudication pursuant to La.Code Civ.P. art. 641 and must be brought to the table.

The allegations underlying the claims asserted by the parties are not only relevant to the necessity of Sweet Lake being made a party, they are critical to the appeal before this court insofar as we are unable to consider several of the issues raised on appeal due to the failure of the parties to raise these issues in the trial court. The record establishes that this case was presented to the trial court and was tried within the framework of a 2008 Release and a New Lease, and the resultant consequences to the parties. Now, on appeal, the validity of these documents are being called into question. In other words, in the trial court, the ORI owners sought damages from Oleum not only for damages for past due royalties owed, but also for damages resulting from the release of the 1947 Amended Lease which terminated their ORIs. Whereas, subsequently on appeal, the ORI owners argue that their ORIs actually remain in effect because the 2008 Release was invalid.

"Generally, a court of appeal will not consider an issue which is raised for the first time on appeal. *Stewart v. Livingston Parish Sch. Bd.*, 07-1881 (La.App. 1 Cir. 5/2/08), 991 So.2d 469; Uniform Rules—Courts of Appeal, Rule 1-3." *Gremillion v. Gremillion*, 10-05, p. 6 (La.App. 3 Cir. 7/7/10), 43 So.3d 1063, 1068, *writ denied*, 10-2125 (La. 12/10/10), 51 So.3d 726. Because these issues are being

---

[19]The transcript of that hearing was the subject of a Motion and Order to Supplement the record, which was granted by this court. *Jerry Suire v. Oleum Operating Co.*, 13-736 (La.App. 3 Cir. 8/30/13).

presented for the first time on appeal, we conclude that these issues have not been preserved for our consideration.

Having found Sweet Lake to be a party needed for just adjudication of certain issues raised by the parties on appeal, specifically the validity of the 2008 Release and the New Lease, and considering the failure of the parties to raise these issues in the trial court to the extent that they are not addressed in the judgment, we do not consider the following assignments of errors of the parties:

A. Oleum's Appeal – Assignments of Error relative to:

1. The 2008 Release and the absence of an anti-washout provision;
2. Parole evidence and proof of ORI;
3. Bad faith in Oleum's release of the 1947 Amended Lease as to the Suires;
4. Bad faith in Oleum's release of the 1947 Amended Lease as to the Prices and Hallers; and
5. Solidary liability for damages due to Oleum's release of the 1947 Amended Lease.

B. Suires' Answer to Appeal – Assignments of Error relative to:

1. The ORI pertaining to an alleged "top-lease"; and
2. The validity of the 2008 Release of the 1947 Amended Lease.

C. Prices' and Hallers' Answer to Appeal – Assignments of Error relative to:

1. The ORI pertaining to an alleged "top-lease"; and
2. The validity of the 2008 Release of the 1947 Amended Lease.

D. J & J's Answer to Appeal – Assignments of Error relative to:

1. Oleum's violation of the 2003 Settlement Agreement by the 2008 Release of the 1947 Amended Lease;
2. Oleum's violation of the notice requirements by its release of the 1947 Amended Lease;
3. The 1947 Amended Lease's force and effect over then producing wells and surrounding twenty acres; and
4. The breach, vel non, of the Purchase and Sale Agreement and Assignment and Bill of Sale from J & J to Oleum.

**OLEUM'S APPEAL**

*Assignment of Error Number One*

In its first assignment of error, Oleum asserts that the trial court erred in awarding damages based upon Oleum's release of the 1947 Amended Lease. We agree with Oleum that an award for damages *resulting from the 2008 Release* was erroneous. However, the damages awarded by the trial court to each of the ORIs were comprised of two components: (1) amounts for past due royalties owed; and (2) amounts the ORIs would have received but for the 2008 Release.

For the reasons hereinafter set forth addressing other assignments of error considered in this opinion, we find no error in the trial court's award of past due royalties owed by Oleum to the Suires. However, we affirm, as amended herein, the amount awarded by the trial court for past due royalties owed to the Hallers and the Prices. Finally, we reverse the trial court's awards of damages in favor of the Suires, the Hallers, and the Prices, based on the projected values of the ORIs had they attached to the New Lease.

**Past Due Royalties Owed – Pre-2008 Release and New Lease**

*The Suires*

As stated above, for the reasons hereinafter set forth addressing other assignments of error considered in this opinion, we find no error in the trial court's award of past due royalties owed the Suires by Oleum. Therefore, we affirm the judgment of the trial court in favor of the Suires for $283,282.79.[20]

---

[20] In its oral reasons, the trial court stated:

[P]laintiffs, Jerry and Antonio Suire, should be repaid in the amount of $283,282.79, which is the total of the royalties that should have been paid to the Suires for the month of August 2006, the 1.98 percent overriding royalty interest for the month . . . of July '07 through June 2008, and the 3 percent overriding royalty interest for the months of February 2008 through June 2008.

*The Hallers*

Considering the lack of any assignments of error raised relative to the amount of the past due royalties awarded to the Hallers, we need not and do not consider the amount of damages awarded by the trial court for these damages occurring prior to the 2008 Release and New Lease. However, because the judgment of the trial court renders a total amount to the Hallers, without specifying what portion of that amount constitutes past due royalties owed, we must and do amend that portion of the judgment to conform it with allowing only damages occurring prior to the 2008 Release and New Lease.

With respect to Steven Haller, the trial court rendered judgment "for the full sum" of $101,378.00. When reconciled with the trial court's oral reasons, it is clear that this figure represents the amount the trial court awarded Mr. Haller for the two elements of damages combined.[21] Accordingly, we affirm the judgment of the trial court awarding Mr. Haller past due royalties owed, but we amend said judgment to reflect that the correct amount owed by Oleum to Mr. Haller for this component of damages is $13,475.00.

A separate award is made in the judgment to Paula Haller, also designated "for the full sum of" $101,378.00. Again, considering the trial court's oral reasons, it is clear that this figure represents the amount the trial court awarded Mrs. Haller for the two elements of damages combined. Accordingly, we affirm the judgment of the trial court awarding Mrs. Haller past due royalties owed, but

---

[21] In its oral reasons, the trial court stated:

> The [I]ntervenors, Steven and Paula Haller, should be repaid . . . in the amount of $13,475[.00] each, for a total of $26,950[.00] . . . which is the total of the royalties that should have been paid to each of the Hallers for the month[s] of March 2008 through June 2008.

Therefore, the difference, $175,806.00, is actually the second element of damages that the trial court awarded to the Hallers.

we amend said judgment to reflect that the correct amount owed by Oleum to Mrs. Haller for this component of damages is $13,475.00.

*The Prices*

Considering the lack of any assignments of error raised relative to the amount of the past due royalties awarded to the Prices, we need not and do not consider the amount of damages awarded by the trial court for these damages occurring prior to the 2008 Release and New Lease. However, because the judgment of the trial court renders a total amount to the Prices, without specifying what portion of that amount constitutes past due royalties owed, we are forced to amend that portion of the judgment to conform it with allowing only damages occurring prior to the 2008 Release and New Lease.

With respect to the Prices, the trial court rendered judgment "for the full sum" of $202,857.00 in globo. When reconciled with the trial court's oral reasons, it is clear that this figure represents the amount the trial court awarded the Prices for the two elements of damages combined.[22] Accordingly, we affirm the judgment of the trial court awarding the Prices past due royalties owed, but we amend said judgment to reflect that the correct amount owed by Oleum to the Prices for this component of damages is $27,049.00 in globo.

**Value of ORIs had they attached to the New Lease – Post-2008 Release and New Lease**

The second component of damages awarded by the trial court is an award for damages for the amounts that the ORI owners would have received had there not

---

[22]In its oral reasons, the trial court states: "[T]he [I]ntervenor[s], Preston and Susan Price, should be paid in the amount of $27,049[.00], which is the total of royalties that should have been paid to the Prices for the months of March 2008 through June 2008." Therefore, the difference, $175,808.00, is actually the second element of damages that the trial court awarded to the Prices.

been a 2008 Release. These amounts are based upon projected values of the ORIs had they attached to the New Lease in July 2008 through trial. Because this second component of damages is inextricably tied to the validity, vel non, of the 2008 Release and the New Lease, which was not specifically ruled on by the trial court, and because a necessary party, Sweet Lake, was not a party to this litigation, we find the trial court erred in rendering these damage awards.

*The Suires*

For the foregoing reasons, we reverse the judgment of the trial court in favor of the Suires in the amount of $868,872.43.

*The Hallers*

For the foregoing reasons, we reverse the judgment of the trial court in favor of Mr. Haller in the amount of $87,903.00 ($101,378.00 - $13,475.00).

For the foregoing reasons, we reverse the judgment of the trial court in favor of Mrs. Haller in the amount of $87,903.00 ($101,378.00 - $13,475.00).

*The Prices*

For the foregoing reasons, we reverse the judgment of the trial court in favor of the Prices in the amount of $175,808.00 ($202,857.00 - $27,049.00).

*Assignment of Error Number Six*

In its final assignment of error, Oleum asserts that the trial court erred in ruling that the PCR was invalid and did not serve to reduce Mr. Suire's 1.98% ORI. We find no merit in this assignment of error.

As set forth above, Oleum first delayed and, in June 2007, ultimately stopped paying Mr. Suire's 1.98% ORI. It contended that the PRC was the basis for its actions.

The applicability of the PRC was originally the subject of cross-motions for partial summary judgment filed by Oleum and Mr. Suire. Following a hearing, the

trial court denied Oleum's motion and granted Mr. Suire's motion, ruling that Oleum was not entitled to take advantage of the PRC, which it relied upon to reduce the 1.98% ORI payment to Mr. Suire.

The PRC in question is contained within a May 1, 2000 document entitled "ASSIGNMENT OF ORRIDING [sic] ROYALTY INTEREST[.]" The document initially states that Oleum assigns an ORI in the Old Lease to Mr. Suire. It then sets forth that the assignment is subject to certain terms and conditions, including:

> The ORRI conveyed is to be proportionately reduced if any of the leases herein affected by said interest cover less than full mineral ownership of the tract leased, and is to be proportionately reduced if the assignment from J & J ONSHORE PRODUCTION, INC. (J & J) to OLEUM covers less than 100% of the leasehold working interest noting that it is believed that J & J conveyed 100% of the leasehold working interest from surface to the base of the Cibicides Hazzardi Formation and 2/3 of the leasehold working interest below the base of said formation and is subject to all other instruments affecting the leases hereby conveyed.

Oleum's interpretation of the foregoing provision is that an automatic reduction of the 1.98% ORI it granted to Mr. Suire would occur "if *subsequent events* caused the Lease to 'cover less than full mineral ownership of the track leased.'" (emphasis added). Oleum concludes that the 2003 Settlement triggered the PRC by significantly reducing the scope of the lease.[23] In sum, Oleum states that the consequence or "effect of the lawsuit aimed [by Sweet Lake] at [J & J] was to deprive Oleum of a good portion of the 480 acres of mineral rights [J & J] promised to deliver." Because of these settlement terms, Oleum argues that J & J failed to deliver all of its working interest,[24] as it was obligated to do.

---

[23]The 2003 Settlement provided for a release of 200 of the 480 acres (41.67%) of the acreage of the "Shallow Rights" and all of the "Deep Rights."

[24]J & J's ownership at the time of the sale to Oleum was a 100% leasehold interest in the "Shallow Rights" and a 2/3 leasehold interest in the "Deep Rights."

Accordingly, once the PRC was triggered, Oleum asserts that it overpaid Mr. Suire from 2003 through May 2007 based upon a 1.98% ORI which it was actually entitled to reduce to 1.1% as of 2003. Oleum relies on these "overpayments" for its actions in withholding payment of Mr. Suire's 1.98% ORI from July 2007 through February 2008, when the 1947 Amended Lease was terminated, in order to recoup payments it made of amounts not due.[25]

In opposition to Oleum's motion, and in support of his own motion for partial summary judgment, Mr. Suire argued that the PRC was inapplicable and that he was entitled to full payment of the 1.98% ORI as a matter of law. Mr. Suire notes that despite Oleum's purported reliance on the 2003 Settlement as the trigger for the PRC, Oleum continued to pay him the 1.98% ORI for many years.

Mr. Suire advances two different grounds for the inability of Oleum to invoke the provisions of the PRC. First, the PRC is not contained within any contract between the parties, namely, he (and/or J & J) and Oleum. Second, even assuming there is a valid PCR, Mr. Suire argues that "the clause would not apply because [J & J] fulfilled all the terms of the [PRC]."

First, Mr. Suire identifies the two contracts in which J & J and Oleum had privity: (1) the Purchase and Sale Agreement; and (2) the Assignment and Bill of Sale. He notes that the Purchase and Sale Agreement contains no PRC, and the Assignment and Bill of Sale does not mention any PRC. These being the only two contracts between J & J and Oleum, Mr. Suire points out that the May 1, 2000 document relied upon by Oleum, and containing the PRC, is signed *only* by Oleum. Neither J & J nor Mr. Suire are signatories on that document. Therefore,

---

[25]Oleum notes in brief that it "was not able to present its entire case on this issue since the trial court had summarily ruled that the [PRC] was not applicable." Further, Oleum states that it "intended" to introduce evidence necessary to determine the value of the proportionate interest lost by virtue of the 2003 Settlement and the proportion of the ORI payment to Mr. Suire before July 2007. Oleum concludes that "[w]ith these facts proven, [it] would be entitled to a judgment against [Mr. Suire] for the overpayments."

21

Mr. Suire characterizes the May 1, 2000 document as a "unilateral, self-serving document produced by Oleum which first makes the assignment of 1.98% as mandated by the Purchase and Sale Agreement and Assignment and Bill of Sale, but then goes further to place conditions upon the payment of the [ORI] of 1.98%."[26] He concludes that because the PRC is not contained within any contracts and was not "mentioned, bargained for, paid for, or accepted by" Oleum, J & J, or Mr. Suire, Oleum was obligated to pay him the 1.98% ORI, which it failed to do.

Mr. Suire refutes Oleum's contention that the 2003 Settlement, entered into by Sweet Lake, J & J, and Oleum, somehow triggered an "invalid" PRC, thereby reducing his 1.98% ORI. With respect to the 2003 Settlement, Mr. Suire notes that the 1.98% ORI was owed to him personally, and he was not a party to the 2003 Settlement. Additionally, the Settlement Agreement and Release does not mention any reduction of Mr. Suire's ORI, nor does it reference a PRC.

Second, even assuming the PCR is applicable, Mr. Suire asserts that J & J satisfied its terms. He asserts that "[t]here were two conditions placed upon [J & J] that were required to be fulfilled **at the time of transfer of interest**." According to Mr. Suire, both of "[t]hese conditions were fully complied with by [J & J] at the time of the transfer in 2000." Focusing on "the time of transfer" as the relevant time period, Mr. Suire concludes that the PRC was not triggered.

The trial court's oral reasons reveal that it agreed with Mr. Suire that Oleum could not rely on "*subsequent events*" to trigger the PRC. When considering the cross motions for partial summary judgment, the trial court reasoned that "even if valid, [the PRC] is inoperable because [J & J] gave what [it] said [it] was going to

---

[26]Mr. Suire also notes that Oleum never filed this document with the Clerk of Court of Calcasieu Parish.

22

give." Regardless of its applicability, the trial court concluded that J & J transferred 100% of what it owned as it was obligated to do at the time of the transfer.

We agree with Mr. Suire that the PCR is inapplicable given its absence from any contract between him (and/or J & J) and Oleum. Further, we agree that the obligations of J & J were fulfilled at the time of transfer. Therefore, we find no error in the trial court's grant of Mr. Suire's motion for partial summary judgment and its denial of Oleum's motion for partial summary judgment relative to the PRC.

## SUIRES' ANSWER TO APPEAL

*Assignment of Error Number One*

In their first assignment of error, the Suires assert error in the trial court's failure to award penalties and attorney fees for Oleum's unreasonable failure to pay the ORI. We find no merit in this contention.

The Suires identify three differing periods that Oleum failed to pay the ORI, which they contend entitled them to an award of penalties and attorney fees: (1) Oleum's non-payment of the ORI of August 2006; (2) Oleum's nonpayment of the Suire Override (1.98%) from July 2007 through June 2008; and (3) Oleum's non-payment of the Flash Override (3.0%) from February 2008 through June 2008. In these instances of non-payment, the trial court awarded the Suires the amount of the ORI; however, the trial court did not award any amount of damages in the nature of penalties and attorney fees.

The relevant provisions contained within Louisiana's Mineral Code are found at La.R.S. 31:212.21 through La.R.S. 31:212.23. Louisiana Revised Statues 31:212.21 (emphasis added) places a prerequisite upon a royalty owner seeking penalties and attorney fees, stating as follows:

If the owner of a mineral production payment or a royalty owner other than a mineral lessor seeks relief for the failure of a mineral lessee to make timely or proper payment of royalties or the production payment, he must give his obligor *written notice* of such failure as a prerequisite to a judicial demand for damages.

Thereafter, the mineral lessee must respond pursuant to La.R.S. 31:212.22 (emphasis added), which provides as follows:

The obligor shall have thirty days after receipt of the required notice within which to pay the royalties or production payments due or to *respond by stating in writing a reasonable cause for nonpayment*. The payment or nonpayment of the sums due or stating or failing to state a reasonable cause for nonpayment within this period has the following effect.

Lastly, La.R.S. 31:212.23(C) (emphasis added) provides, in pertinent part:

If the obligor fails to pay and fails to state a reasonable cause for failure to pay in response to the notice, the court *may* award as damages double the amount due, legal interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay.

This court addressed the above provisions of the mineral code in *CLK Co., L.C.C. v. CXY Energy, Inc.*, 07-834 (La.App. 3 Cir. 12/19/07), 972 So.2d 1280, *writs denied*, 08-140, 08-207 (La. 3/14/08), 977 So.2d 932, 937. Although the issue in that case was the sufficiency of the written notice, with respect to the award of damages, we reasoned as follows:

A royalty owner must give a mineral lessee written notice of his failure to "make timely or proper payment of royalties . . . as a prerequisite to a judicial demand for damages." La.R.S. 31:212.21. If the mineral lessee fails "to pay and fails to state a reasonable cause for failure to pay in response to the notice" within thirty days of receipt of the notice, a court "*may*" award the royalty owner double damages. La.R.S. 31:212.23(C). Initially, we observe that Section 212.23's use of "*may*" means that even if CLK's letters constitute written notice under these provisions, an award of double damages is *not mandatory*.

*Id.* at 1290 (emphasis added).

24

In the case at bar, the parties dispute whether Oleum had "reasonable cause"[27] for its nonpayment of the ORI. Although the trial court found that the reasons set forth by Oleum were invalid, it found that the imposition of penalties and attorney fees was not warranted and refused to award any. Mindful that statutory penalties are penal in nature and should be construed strictly, and considering the discretion afforded to the trial court in such matters,[28] we find no manifest error in the trial court's denial of the Suires' claim for penalties and attorney fees.

**PRICES' AND HALLERS' ANSWER TO APPEAL**

In their first assignment of error, the Prices and the Hallers assert error in the trial court's failure to award penalties and attorney fees for Oleum's nonpayment of the ORI. They contend that they were entitled to an award of penalties and attorney fees for Oleum's non-payment their ORI from March 2008 through June 2008. For the non-payment of these ORIs, the trial court actually awarded $26,950.00 in favor of the Hallers and $27,049.00 in favor of the Prices; however, the trial court did not award any penalties and attorney fees. For the reasons set forth above in addressing the Suires' answer to appeal, we, likewise, find no merit in this contention.

**J & J'S ANSWER TO APPEAL**

J & J argues in its answer to appeal that the trial court erred in denying its claim that Oleum breached the Purchase and Sale Agreement and Assignment and

---

[27] For purposes of clarity, we acknowledge that the parties discuss alleged "bad faith" on the part of Oleum in different contexts. Specifically, the parties (as well as the trial court) use the term in connection with the asserted "bad faith" on the part of Oleum in releasing the Old Lease. For the reasons previously set forth in this opinion, we do not consider Oleum's actions with respect to the 2008 Release. Rather, this discussion is expressly and purposefully limited to "reasonable cause" and whether the trial court erred in failing to award the Suires penalties and attorney fees for Oleum's non-payment of ORI, i.e., the $283,282.79 awarded for past due royalties owed pursuant to La.R.S. 31:212.23 *prior* to said release.

[28]S*ultana Corp. v. Jewelers Mut. Ins. Co.*, 03-360 (La. 12/3/03), 860 So.2d 1112.

Bill of Sale, which J & J asserted "resulted in voiding the sale, *ab initio*," and, thereby, entitled J & J to "an award of the profits wrongfully realized by [Oleum]." Having reviewed the scant evidence in the record relevant to this claim, we agree with the trial court that this claim was not proven.

## DISPOSITION

Based on the foregoing, we affirm the trial court's damage award of $283,282.79 for past due royalties owed in favor of Jerry J. and Antonio G. Suire and against Oleum Operating Company, L.C. and AKSM, L.C., together with legal interest from the date each payment was due up through July 2, 2008. We affirm the trial court's award of damages for past due royalties owed in favor of Steven Haller and against Oleum Operating Company, L.C. and AKSM, L.C., but amend the amount of the award to $13,475.00, together with legal interest from the date each payment was due up through July 2, 2008. We affirm the trial court's award of damages for past due royalties owed in favor of Paula Haller and against Oleum Operating Company, L.C. and AKSM, L.C., but amend the amount of the award to $13,475.00, together with legal interest from the date each payment was due up through July 2, 2008. We affirm the trial court's award of damages for past due royalties owed in favor of Preston Andrews and Susan R. Price and against Oleum Operating Company, L.C. and AKSM, L.C., but amend the amount of the award to $27,049.00, together with legal interest from the date each payment was due up through July 2, 2008. We affirm the trial court's denial of penalties and attorney fees to the Suires, the Hallers, and the Prices. Finally, we reverse the trial court's award of damages and judicial interest in favor of the Suires, the Hallers, and the Prices, and against Oleum Operating Company, L.C. and AKSM, L.C., post 2008 Release and New Lease (i.e., July 2, 2008) in the amounts of $868,872.43, $175,806.00, and $175,808.00 respectively.

The costs of this appeal are assessed one-half to Plaintiffs, Jerry J. Suire and Antonia G. Suire; Plaintiff in Reconvention, J & J Onshore Production, Inc.; and, Intervenors, Preston Andrews Price and Susan R. Price and Steven Haller and Paula Haller—and one-half to Defendants, Oleum Operating Company, L.C. and AKSM, L.C.

**AFFIRMED IN PART;**
**AFFIRMED IN PART AS AMENDED;**
**AND REVERSED IN PART.**