STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-117


JERRY J. SUIRE, ET AL.

VERSUS

OLEUM OPERATING COMPANY, ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-697
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.


**AFFIRMED.**


Joseph P. Hebert
Paul Matthew Jones
Brian W. Capell
Liskow & Lewis
Post Office Box 52008
Lafayette, Louisiana 70505
(337) 232-7424
Counsel for Defendants/Appellants:
    Oleum Operating Company, L.C.
    AKSM, L.C.

**Guy E. Wall**
**Jonathan R. Cook**
**Maurine Wall Laborde**
**Wall, Bullington & Cook, LLC**
**540 Elmwood Park Boulevard**
**Harahan, Louisiana 70123**
**(504) 736-0347**
**Counsel for Defendant/Appellant:**
  **Sweet Lake Land & Oil Company, L.L.C.**

**Chadwick W. Collings**
**C. Randall Loewen**
**Milling Benson Woodward L.L.P.**
**68031 Capital Trace Row**
**Mandeville, Louisiana 70471**
**(985) 292-2000**
**Counsel for Plaintiffs/Appellees:**
  **Jerry J. Suire**
  **Antonia Suire**
  **J & J Onshore Production, Inc.**

**Brett P. Furr**
**Edward D. Hughes**
**Taylor, Porter, Brooks, & Phillips, LLP**
**Post Office Box 2471**
**Baton Rouge, Louisiana 70821**
**(225) 387-3221**
**Counsel for Intervenors/Appellees:**
  **Preston Andrews Price**
  **Susan R. Price**
  **Steven Haller**
  **Paula Haller**

**KEATY, Judge.**

In this suit for damages arising out of a mineral lease, the current operators/lessees, Oleum Operating Company, L.C. and AKSM, L.C., and the owner/lessor, Sweet Lake Land & Oil Company, L.L.C., appeal the trial court's grant of a Motion for Partial Summary Judgment in favor of the overriding royalty interest (ORI) owners, Jerry J. Suire, Antonia Suire, J & J Onshore Production, Inc.,[1] Preston Andrews Price, Susan R. Price, Steven Haller, and Paula Haller. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

This court is familiar with the factual and procedural history in light of *Suire v. Oleum Operating Co., L.C.*, 13-736 (La.App. 3 Cir. 2/5/14), 135 So.3d 87, *writs denied*, 14-982 (La. 8/25/14), 147 So.3d 1120 and 14-987 (La. 9/12/14), 147 So.3d 707. As the facts have not materially changed since that opinion, we adopt the facts set forth therein by reference as though set forth in full herein:

> This litigation involves the alleged failure of Oleum Operating Company, L.C. and AKSM, L.C. (collectively referred to as Oleum)[2] to pay the overriding royalty interest (ORI) due Jerry J. and Antonia G. Suire, Preston Andrews and Susan R. Price, and Steven and Paula Haller (collectively referred to as ORI owners). The property subject to the mineral lease at issue is located in Calcasieu Parish, and the owner/lessor of the property is Sweet Lake Land & Oil Company (Sweet Lake). The current operator/lessee is Oleum. The present parties' interests stem from the execution of a mineral lease in 1947 by Sweet Lake and J.A. Bonham.[3]
>
> Since 1947, there have been several different operators/lessees of the property owned by Sweet Lake. A portion of the ORI at issue in this litigation was created in 1989, when Flash Oil & Gas granted an ORI to its owners, Preston Price and Steven Haller (and their wives Susan R. Price and Paula Haller), collectively amounting to 2.0153%,

---

[1] J & J Onshore Production, Inc., is owned by Jerry J. Suire and Antonia Suire.

[2] These entities are owned and operated by Mike Snell and his family.

[3] We refer to the original lease herein as the Old Lease as it is referred to by the parties.

and a 3% ORI to Jerry Suire.[4]   In later years, J & J Onshore Production, Inc. (J & J) became the operator/lessee of the Old Lease, and it continued to pay the ORI to the Flash Overrides.

Over time, the relationship between Sweet Lake and J & J, particularly Mr. Suire, became strained, and, in 2000, Sweet Lake sued J & J, claiming that the Old Lease was terminated.[5]   In that litigation, Sweet Lake also alleged that J & J failed to pay royalties, failed to develop the property, and failed to produce oil and gas in paying quantities.   During this contentious period, Oleum became involved when it purchased J & J's operating interest and assigned an additional ORI to Mr. Suire.[6]   Ultimately, in 2003, a settlement agreement was reached between Sweet Lake, J & J, and Oleum wherein the terms, rights, and obligations of the parties under the Old Lease were changed.[7]   For five years thereafter, Oleum continued as operator/lessee until further disputes arose between it and Sweet Lake in 2008.

In 2008, Sweet Lake sent a letter to Oleum, claiming that it violated the terms of the 1947 Amended Lease.   Sweet Lake demanded that Oleum vacate the property and return all fruits derived from the 1947 Amended Lease, dating back to 2003.   At this juncture, negotiations ensued between Sweet Lake and Oleum.   As a result of these negotiations, on July 2, 2008, Oleum unilaterally executed an Act of Release of Oil, Gas and Mineral Lease thereby releasing the 1947 Amended Lease.[8]   The 2008 Release was executed without the knowledge of the ORI owners, who, as a result thereby, were divested of all of their ORI.   Also on July 2, 2008, another lease was entered into by Oleum, through Mike Snell, an owner and operator.[9]   Notably, Mr. Snell transferred the divested ORI owners' rights to himself, personally, in the New Lease.   The consequences of the 2008 Release and the New Lease are at the heart of the current litigation.

. . . .

---

[4] We refer to these ORIs as the Flash Overrides, as they are referred to by the parties.

[5] Additionally, Sweet Lake sought damages for the restoration of the property, plugging and abandoning wells, and removal of equipment.

[6] This ORI, referred to as the Suire Override, amounted to 1.98%.

[7] We refer to this new agreement as the 1947 Amended Lease, as it is referred to by the parties.

[8] We refer to this document as the 2008 Release, as it is referred to by the parties.  An Act of Correction was later filed on July 29, 2008, providing for the effective date of the release to be March 1, 2008.

[9] We refer to the 2008 lease as the New Lease, as it is referred to by the parties.

As a result of these events, suit was instituted by the Suires against Oleum and AKSM, initially seeking unpaid ORI, penalties, and attorney fees. After the initial petition was filed, a number of incidental demands were made by and against the various parties. Claims of intervention were asserted by the Prices and the Hallers for their unpaid ORI, penalties, and attorney fees. Oleum filed a reconventional demand against the Suires, asserting that it was entitled to an offset and/or recoupment of ORI payments made to Mr. Suire and, further, that their ORI was subject to a reduction based upon the [proportionate reduction clause]. Oleum later supplemented its reconventional demand against the Suires, seeking damages for a misrepresentation of the condition of the C-8 wellbore.

Oleum also filed a third party claim against J & J, claiming that it was entitled to a reimbursement of the ORI payments erroneously made to J & J. Alternatively, Oleum asserted that if it were determined that it had improperly taken certain offsets, that these amounts were still owed by J & J to Oleum. Claims were also made against J & J for damages relative to the C–8 wellbore.

J & J filed a reconventional demand against Oleum, alleging that Oleum breached the terms of their May 15, 2000 Purchase and Sale Agreement, whereby J & J sold its interest in the 1947 Amended Lease to Oleum by failing to pay Mr. Suire his 1.98% ORI and in failing to provide J & J notice of its attempt to release the lease. Further, J & J contended that Oleum's failure to obtain J & J's agreement was a breach of the 2003 settlement agreement.

. . . .

After a trial on the merits, the trial court recited oral reasons for judgment in favor of the ORI owners and dismissed the other ancillary claims between the parties.[10] In accordance therewith, the trial court signed a judgment October 15, 2012[.]

*Id*. at 89-92.

The parties appealed, and this court issued a ruling on February 5, 2014. *Suire*, 135 So.3d 87. Therein, this court affirmed the trial court's judgment ordering payment to the Suires, Prices, and Hallers of past-due ORIs "through July 2, 2008." *Id*. at 104. It reversed the trial court's judgment with respect to payment

---

[10] As hereinafter discussed, the validity, vel non, of the 2008 Release and the New Lease are both critical to a legal disposition of the claims made herein; however, neither were specifically ruled on by the trial court or referenced in the judgment.

of past-due ORIs "post 2008 Release and New Lease (i.e., July 2, 2008)."[11] *Id.* The third circuit found that Sweet Lake was "a party needed for just adjudication[.]" *Id.* at 96. On rehearing, this court supplemented its previous disposition by "ordering a remand of the matter to the trial court for further proceedings." *Id.* at 105. Writs were then denied by the Louisiana Supreme Court on August 25, 2014 and September 12, 2014. *Id.*

Following remand to the trial court, the ORI owners amended their petitions and named Sweet Lake and Michael Snell as additional Defendants. Oleum and Mr. Snell filed exceptions of res judicata and no cause of action—law of the case. Following a hearing on June 15, 2015, and pursuant to a written judgment rendered on July 1, 2015, the trial court denied the exceptions. Writs were denied by both this court and the Louisiana Supreme Court. *Suire v. Oleum*, 15-667 (La.App. 3 Cir. 10/2/15) and 15-2011 (La. 12/7/15).

On April 11, 2016, the Suires and J & J Onshore filed a Motion for Partial Summary Judgment, which was subsequently adopted by the Hallers and Prices. Oleum and Sweet Lake filed oppositions. The ORI owners filed reply memorandums, objecting to certain exhibits attached to Oleum and Sweet Lake's opposition memorandums. The Motion for Partial Summary Judgment was ultimately granted in favor of the ORI owners following a hearing on July 18, 2016. A written judgment was signed on August 15, 2016. Thereafter, Oleum and Sweet Lake filed motions for a new trial, which were denied by the trial court on October 11, 2016. Oleum and Sweet Lake appealed the trial court's judgment.[12]

On appeal, Oleum asserts the following assignments of error:

---

[11] The New Lease is the same document we refer to herein as the 2008 Top Lease.

[12] Mr. Snell did not appeal the trial court's judgment.

4

1. The trial court erred in granting Plaintiffs' Motion and ruling that the 2008 Release and the 2008 [Top] Lease are null and void.

2. The trial court erred in granting Plaintiffs' Motion and ruling that the Old Lease has been maintained in force and effect.

3. The trial court erred in granting Plaintiffs' Motion and ruling that Plaintiffs' overriding royalty interests remain in full force and effect.

4. The trial court erred in refusing to consider trial testimony from this case when ruling upon Plaintiff's [sic] Motion.

5. The district court erred by considering the Invalid Release Theory raised by Plaintiffs' Motion and denying Oleum and AKSM's Exception of *Res Judicata* because the judgment previously rendered by this Court denying the claim is final and controlling.

6. The district court erred by considering the Invalid Release Theory raised by Plaintiffs' Motion and denying Oleum and AKSM's Exception of No Cause of Action based on the Law of the Case Doctrine because the judgment previously rendered by this Court has already rejected the claim in this litigation.

Sweet Lake asserts the following assignments of error:

1. The trial court erroneously granted plaintiffs' partial summary judgment that the [2008] Release and 2008 [Top] Lease are null and void because they were signed without J & J's consent.

2. The trial court erred in granting plaintiffs' partial summary judgment that the [1947] Lease has been maintained in force and effect in accordance with its terms.

3. The trial court improperly excluded the certified records of the Office of Conservation offered by [Sweet Lake] in opposition to plaintiffs' motions for partial summary judgment.

## STANDARD OF REVIEW

"Appellate courts review summary judgments *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Greemon v. City of Bossier City,* 10-2828, 11-39, p. 6 (La. 7/1/11), 65 So.3d 1263, 1267. A summary judgment "shall be granted if the motion,

memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).[13] "Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute." *Nicholson v. Calcasieu Parish Police Jury*, 96-314, p. 3 (La.App. 3 Cir. 12/11/96), 685 So.2d 507, 510. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Cressy v. Huffines Hyundai McKinney, LP*, 16-712, p. 3 (La.App. 3 Cir. 2/22/17), 212 So.3d 683, 686, *writ denied*, 17-510 (La. 5/19/17), 220 So.3d 751 (quoting *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755). In order to determine whether an issue is genuine, courts may not "consider the merits, make credibility determinations, evaluate testimony or weigh evidence." *Phillips v. City of Crowley*, 12-1306, p. 5 (La.App. 3 Cir. 6/19/13), 115 So.3d 1240, 1244, *writ denied*, 13-1718 (La. 11/1/13), 125 So.3d 432.

## DISCUSSION

### I.     2008 Release and 2008 Top Lease

In its first assignments of error, Oleum and Sweet Lake contend the trial court erred by ruling that the 2008 Release and the 2008 Top Lease were null and void because they were signed without J & J Onshore's consent, as required by the 2003 Settlement Agreement.

---

[13] We note that La.Code Civ.P. art. 966 was amended by 2015 La. Acts No. 422, § 1, and its provisions became effective on January 1, 2016. This matter is considered applying the provisions of the Louisiana Code of Civil Procedure as it existed at the time of the trial court's consideration. *See* 2015 La. Acts. No. 422, § 2 which states: "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act."

The 2003 Settlement Agreement is dated May 28, 2003, signed by Sweet Lake, J & J Onshore,[14] and Oleum, and provides that all three parties "agree to settle their differences according to the following terms." It states that "[Sweet Lake] shall ratify and confirm the 1947 Lease as amended." Importantly, Section (II)(D)(5) states:

> **Amendments.** No amendment, modification, consent, or waiver of any provision of this Settlement Agreement and Release, and no consent to any departure from its written terms shall be effective unless the same is in writing signed by all the parties to this Settlement Agreement and Release and the amendment, modification, consent, waiver, or departure from this Settlement Agreement and Release shall be effective only as to the specific instances and for the specific purpose for which it is given.

Defendants/Appellants contend that the consent clause in Section (II)(D)(5) pertains only to modification of the 2003 Settlement Agreement, not the 1947 Lease. Appellants further argue that the subsequent release of the 1947 Lease is not an amendment to the 2003 Settlement Agreement.

The 2003 Settlement Agreement constitutes a compromise, which is "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La.Civ.Code art. 3071. With respect to contractual interpretation, the Louisiana Supreme Court has stated:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 10 (La. 5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Sims*, 07-0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans*, 35 La. Ann. 273 (1883). "When the words of a contract are clear and

---

[14] Mr. Suire, in his capacity as President of J & J Onshore, signed on its behalf.

explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La. 1/14/94), 630 So.2d 759, 763. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *See Maloney v. Oak Builders, Inc.*, 256 La. 85, 98, 235 So.2d 386, 390 (1970); *McConnell*, 35 La. Ann. at 275. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La.1982).

*Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279.

In this case, the trial court orally ruled "[t]hat the 2003 settlement agreement obligated Oleum and now . . . AKSM to notify Mr. Suire of any changes, including a release in terms of giving it up, letting it go." It stated that notice and consent were required. In its subsequent written judgment, the trial court held: "The 2008 Release and the 2008 Top Lease are null and void because they were not obtained with the express written consent of all parties to the 2003 Settlement Agreement[.]" Our first inquiry, then, is to determine whether, as a matter of law, the trial court correctly ruled that the language employed in the 2003 Settlement Agreement required notice and consent of all three parties prior to any amendment to, or modification of, the terms of the 1947 Lease.

Our review of the 2003 Settlement Agreement reveals its express purpose was to settle a dispute between Sweet Lake, J & J Onshore, and Oleum according to certain agreed-upon terms and conditions, as follows: (1) the 1947 Lease, as amended, would remain in force and effect; (2) the settlement agreement would be binding upon all parties, their successors and assigns; and (3) the settlement agreement's terms regarding future maintenance of the 1947 Lease would not be

modified, waived, or departed from without the written consent of all parties to the agreement. All three parties agreed to be bound by its terms, including the consent clause at issue. The subsequent execution of the 2008 Release by Oleum and AKSM regarding the 1947 Lease in which Plaintiffs/Appellees had ORIs, without obtaining J & J Onshore's consent, was clearly an amendment to, or modification of, the terms of the 2003 Settlement Agreement. Likewise, the issuance of the 2008 Top Lease by Sweet Lake, without J & J Onshore's consent, was a modification to or departure from the 1947 Lease maintenance provisions, as set forth in the 2003 Settlement Agreement. We, therefore, conclude the trial court did not err as a matter of law in determining that Section (II)(D)(5) of the 2003 Settlement Agreement required J & J Onshore's consent. Consequently, the trial court did not err in ruling that the 2008 Release and the 2008 Top Lease were null and void.

Defendants/Appellants argue that Mr. Suire's 2011 deposition testimony contradicts his 2016 affidavit with respect to the alleged purpose and intent of Section (II)(D)(5). Mr. Suire's affidavit, which was submitted in support of the instant Motion for Partial Summary Judgment, revealed the consensual clause was negotiated by him "as a principal cause of the compromise, in an effort to stop self-dealing between Sweet Lake and Oleum, or their successors and assigns." The principal cause for negotiating Section (II)(D)(5), according to his affidavit, "was to keep Mr. Snell, Oleum or Sweet Lake from self dealing or attempting to unilaterally change the terms of the compromise set forth in the 2003 Settlement Agreement, including but, not limited to, the terms for maintaining the [1947] Lease in force and effect." On the other hand, Mr. Suire's prior deposition testimony indicates he was not personally involved with the 2003 Settlement

9

Agreement because it was handled by his attorney. His deposition testimony reveals that the only thing Mr. Suire's attorney explained to him following the 2003 Settlement Agreement was that it was not going to affect his overrides.

We find that Mr. Suire's alleged contradictory deposition testimony does not create a genuine issue of material fact. "A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail." *Nicholson*, 685 So.2d at 510. Since the terms of the 2003 Settlement Agreement are clear and unambiguous, we do not need to inquire as to the parties' intent in drafting the agreement. *See* La.Civ.Code art. 2046.

Accordingly, Oleum and Sweet Lake's first assignments of error are without merit.

## II.    2003 Settlement Agreement

In their second assignments of error, Oleum and Sweet Lake contend the trial court erred by ruling that the 1947 Lease has been maintained in force and effect in accordance with its terms, as amended by the 2003 Settlement Agreement. In that regard, the 2003 Settlement Agreement provides the following terms under Section II:

> A.    **Amendments to the 1947 Lease.** [Sweet Lake], J & J Onshore, and Oleum hereby agree that [Sweet Lake] and Oleum shall amend the 1947 Lease according to the form attached hereto as Exhibit "A", . . . to effect the following changes.
>
> 1. Oleum, as lessee, and J & J Onshore agree that Oleum shall release all of its right, title, and interest in and to the acreage covered and affected by the 1947 Lease, . . . less and except the 280 acres, . . . on the plat attached hereto as Exhibit "B".
>
> 2. Oleum and J & J Onshore agree that within the retained 280 acre area . . . Oleum shall release all rights below the

stratigraphic equivalent of the base of the *Cib Haz* Sand . . . at a log depth of 11,175' . . . .

(a) In the retained 280 acre area, the 1947 Lease shall remain in full force and effect from the surface to the base of the *Cib Haz* Sand for so long as the [Sweet Lake] C-9 Well produces gas in paying quantities.

(b) At such time that the C-9 Well no longer produces gas in paying quantities, Oleum shall release all remaining acreage . . . except that, Oleum will have 90 days . . . to reestablish production . . . .

. . . .

5. Failure to perform any of the obligations of this Settlement Agreement and Release will be deemed an active breach of the 1947 Lease. Upon notice by [Sweet Lake] of the active breach, Oleum shall have 30 days to cure the breach and upon failure to do so, the 1947 Lease shall expire.

The Amendment To Oil, Gas, And Mineral Lease, attached to the 2003 Settlement Agreement as Exhibit "A" (emphasis added), further provides:

14. The 1947 Lease shall remain valid and in force and effect— from the surface to the base of the *Cib Haz* Sand—for the 280 acre area outlined on the attached plat for so long as the [Sweet Lake] C-9 Well continues to produce oil or gas in paying quantities. Upon cessation of production in paying quantities from the C-9 Well, the 1947 Lease shall expire as to the outlined 280 acre area, unless Lessee resumes or restores production in paying quantities from the C-9 Well, **or commences reworking operations in the C-9 Well**, within 90 days after the cessation of production in paying quantities, and continues such operations without the lapse of more than 90 days between the abandonment and resumption of work to establish or restore production of oil or gas from the C-9 Well in paying quantities[.]

Keeping in mind the foregoing, the procedure governing a motion for partial summary judgment is codified at La.Code Civ.P. art. 966(A)(4), and provides: "The only documents that may be filed in support of or in opposition to the motion [for partial summary judgment] are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and

11

admissions." In support of its Motion for Partial Summary Judgment in this case, Plaintiffs/Appellees attached the affidavit of Mr. Suire, who signed in both his individual capacity and as President of J & J Onshore. Mr. Suire attested that "subsequent to July 2, 2008, the [1947] Lease, as amended by the 2003 Settlement Agreement, has been maintained in full force and effect by operations and production from the oil wells known as the C-9, C-2, C-7, C-4 and C-10." He stated that the "[1947] Lease has been maintained in force and effect as to those lands described in the 2003 Settlement Agreement, including, but not limited to, the 150 acres purported to be covered by the 2008 Top Lease[.]"

At trial, Defendants/Appellants failed to offer a counter-affidavit contradicting Mr. Suire's affidavit. Rather, Defendants/Appellants attempted to show that the 1947 Amended Lease "died by itself" following a lapse in production of the C-9 Well from 2009 forward. In support, Defendants/Appellants offered the 2011 deposition testimony of Joel Werner, Sweet Lake's Oil and Gas manager. Mr. Werner testified that the C-9 Well encountered production problems and produced little or nothing at all. Attached to Mr. Werner's deposition testimony, which Defendants/Appellants also offered at trial, was an exhibit of a report from the Strategic Online Natural Resources Information System (SONRIS) regarding the C-9 Well. The SONRIS report revealed "0" oil production and "0" gas production regarding the C-9 Well from April 2009 through June 2011.

Although the trial court admitted into evidence Mr. Werner's deposition testimony and the exhibits thereto, it found that Defendants/Appellants failed to offer competent summary judgment evidence based upon its judgment that "[t]he [1947] Lease has been maintained in force and effect in accordance with its terms, as amended by the 2003 Settlement Agreement[.]" We agree with the trial court

12

because Mr. Werner's deposition testimony and the SONRIS report, which purportedly shows an alleged lack of production, has no effect on the lease's maintenance due to the continued operations language in Exhibit "A". The language in Exhibit "A" regarding the commencement of "reworking operations in the C-9 Well" indicates that maintenance of the lease encompasses production or operations. Mr. Werner's deposition testimony fails to create a genuine issue of material fact given Mr. Suire's affidavit stating that the 1947 Lease, as amended by the 2003 Settlement Agreement, has been maintained by both operations and production. Accordingly, Oleum and Sweet Lake's second assignments of error are without merit.

The trial court also excluded from evidence certified records from the Office of Conservation, offered by Sweet Lake in opposition to the Motion for Partial Summary Judgment. The foregoing is asserted as Sweet Lake's third assignment of error. On review, the record shows the excluded documents, which were proffered, detail the production of wells from the years 2003 through 2006. As noted above, however, the current litigation involves the period of time following July 2, 2008. Sweet Lake's opposition to the Motion for Partial Summary Judgment was also untimely as it was filed on July 5, 2016, which was thirteen days prior to the July 18, 2016 hearing, in violation of La.Code Civ.P. art. 966(B)(2).[15] In excluding the records, however, the trial court explained the

---

[15] Louisiana Code of Civil Procedure Article 966(B)(2) (emphasis added) provides:

> B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
>
> . . . .

13

following at trial: "It's not an affidavit . . . and it's not one of the admissible documents in the . . . exclusive list of documents in the summary judgment law [La.Code Civ.P. art. 966(A)(4)]." We find the trial court did not err in this regard, and Sweet Lake's third assignment of error is without merit.

## III. ORI

In its third assignment of error, Oleum contends that the trial court erred in ruling that Plaintiffs'/Appellees' ORIs remain in full force and effect. In its judgment, the trial court held: "As a matter of law, all the overriding royalty interests that were carved out of the [1947] Lease remain in full force and effect, including the 4.98% [and 2.0135%] overriding royalty interest[s] owned by Mr. and Mrs. Jerry J. Suire[, and Plaintiffs-in-Intervention, the Prices and Hallers]."

The trial court's judgment is supported by Louisiana jurisprudence which provides that an overriding royalty "is an interest severed out of the working interest or lessee's share of the oil, free of the expenses of development, operation and production. Its duration is limited to the life of the lease from which it was created." *Encana Oil & Gas (USA) Inc. v. Brammer Eng'g, Inc.*, 51,045, p. 7 (La.App. 2 Cir. 11/16/16), 209 So.3d 995, 1000, *writ denied*, 17-242 (La. 3/31/17), 217 So.3d 361. As such, the ORI at issue is severed out of, and is an appendage to, the 1947 Lease. The 1947 Lease remains in full force and effect, as provided in the 2003 Settlement Agreement, with respect to the acreage. It follows that the ORI remains in force and effect as to the lands and depths covered by the 1947 Lease. Accordingly, Oleum's third assignment of error is without merit.

---

(2) Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 **not less than fifteen days prior to** the hearing on the motion.

14

## IV.  Trial Testimony

In its fourth assignment of error, Oleum contends the trial court erred in refusing to consider previous trial testimony in this case.  Oleum asserts the trial testimony should be considered because it is identical to a deposition transcript which is allowed under the revised version of La.Code Civ.P. art. 966.  Oleum states that the excluded trial testimony is authenticated and shows the 1947 Lease was not maintained by operations and production.

Generally, a trial court is afforded great discretion concerning the admission of evidence, and its decision to admit or exclude evidence may not be reversed on appeal absent the abuse of that discretion.  *Medine v. Roniger*, 03-3436 (La. 7/2/04), 879 So.2d 706.  In excluding the trial testimony in this matter, the trial court stated that it was "obligated to follow the strict statutory language."  Trial testimony is not the type of documentary evidence that is listed as admissible in support of a motion for partial summary judgment under La.Code Civ.P. art. 966(A)(4).  We find the trial court did not abuse its great discretion in this regard, and Oleum's fourth assignment of error is without merit.

## V.  Invalid Release Theory and Res Judicata

In its fifth assignment of error, Oleum contends the trial court erred by considering the invalid release theory raised by Plaintiffs'/Appellees' Motion for Partial Summary Judgment and denying Oleum's Exception of Res Judicata because the judgment previously rendered by this court denying the claim is final and controlling.

Res Judicata, which is codified at La.R.S. 13:4231, provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Based on the language in the foregoing statute, the supreme court in *Burguieres v. Pollingue*, 02-1385, p. 8 (La. 2/25/03), 843 So.2d 1049, 1053, has established that the following five elements must be satisfied for a finding that a second action is precluded by res judicata: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation."

Keeping in mind the foregoing, the third circuit, *sua sponte*, raised the issue of the failure of Sweet Lake to be made a party to the proceedings pursuant to La.Code Civ.P. art. 641. *Suire*, 135 So.3d 87. This court stated:

An adjudication of whether the 2008 Release was valid and, consequently, whether the 1947 Amended Lease or the New Lease governs today, directly affect the immovable property owned by Sweet Lake. **To effectuate complete adjudication, it is necessary that Sweet Lake be joined as a party to this litigation due to the effect that a judgment will have** on which lease presently encumbers its property and the present operations under that lease.

*Id*. at 96 (emphasis added). On rehearing, this court stated:

16

The second issue raised on rehearing concerns the absence of an express remand despite this court's determination that "Sweet Lake is a party needed for just adjudication pursuant to La.Code Civ.P. art. 641[.]" Finding remand to be appropriate, on rehearing, we supplement our prior disposition of this matter by ordering a remand of the matter to the trial court for further proceedings.

*Id*. at 105.

In this case, the requirements of res judicata have not been met because there was no valid and final judgment with respect to issues arising after the date of the release on July 2, 2008, based on its finding that Sweet Lake needed to be joined as an indispensable party. In Louisiana, the failure to join an indispensable party to an action may be noticed by an appellate court on its own motion. La.Code Civ.P. arts. 645, 927. "When an appellate court notices the absence of indispensable parties to a suit on appeal, the appropriate remedy is to set aside the judgment and remand the matter for joinder of the absent parties and retrial." *Nicholas v. Richardson*, 573 So.2d 1317, 1318 (La.App. 3 Cir. 1991). Accordingly, Oleum's fifth assignment of error is without merit.

Sweet Lake also asserts a res judicata argument. Sweet Lake contends this court's ruling that the 1947 Lease remained in effect through July 2, 2008 is not res judicata as to it because Sweet Lake was not a party to this litigation at the time of the ruling. We find this matter is moot since the Plaintiffs'/Appellees' rights to the ORI through July 2, 2008 have already been established. *Suire*, 135 So.3d 87. The only issues Plaintiffs/Appellees raise on remand is the effectivity of the 2008 Release and the 2008 Top Lease and the ORIs post-July 2, 2008. Thus, Sweet Lake's argument is moot.

17

## VI. Law of the Case Doctrine

In its sixth assignment of error, Oleum contends the trial court erred by considering the invalid release theory raised by Plaintiffs'/Appellees' Motion for Partial Summary Judgment and denying Oleum's Exception of No Cause of Action based on the law of the case doctrine because the judgment previously rendered by this court has already rejected the claim in this litigation.

The "law of the case" doctrine provides that:

> [A]n appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. The law of the case doctrine is discretionary. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results.

*Hernandez v. La. Workers' Comp. Corp.*, 15-118, p. 5 (La.App. 3 Cir. 6/3/15), 166 So.3d 456, 459 (citations omitted). Since the doctrine is discretionary, a prior appellate court ruling "does not preclude reconsideration of an issue on appeal, nor does it prevent the appellate court from reaching a different conclusion." *Id*. at 458. The doctrine also recognizes "the binding force of trial court rulings during later stages of the trial[.]" *Kaleel v. Div. Transp.*, 00-803, p. 1 (La.App. 3 Cir. 8/23/00), 769 So.2d 110, 111 (quoting *Shultz v. Doyle*, 98-1113, p. 5 (La.App. 3 Cir. 2/3/99), 727 So.2d 691, 693, *writ denied*, 99-994 (La. 5/28/99), 743 So.2d 670), *writ denied*, 00-2976 (La. 12/15/00), 777 So.2d 1232.

In this case, this court remanded the matter to the trial court to add Sweet Lake as an indispensable party. *Suire*, 135 So.3d 87. This court held that the 1947 Lease had been maintained in force and effect "through July 2, 2008," and ordered payment of the Suire ORI through that date. *Id*. at 104. However, it never ruled on the validity of the 1947 Lease, and any purported ORIs, post-July 2, 2008.

18

Accordingly, the trial court did not err by denying Oleum's Exception of No Cause of Action based on the Law of the Case Doctrine regarding issues post-July 2, 2008.

## DECREE

The trial court's judgment in favor of Plaintiffs/Appellees, Jerry J. Suire, Antonia Suire, J & J Onshore Production, Inc., Preston Andrews Price, Susan R. Price, Steven Haller, and Paula Haller, is affirmed. All costs of this appeal are assessed to Defendants/Appellants, Oleum Operating Company, L.C., AKSM, L.C., and Sweet Lake Land & Oil Company.

**AFFIRMED.**